Frank MORGAN, Plaintiff–Appellee,

v.

James TICE, Defendant,

Dennis Whitt, individually and in his official capacity and The Town of Lake Park, Defendants–Appellants.

Frank MORGAN, Plaintiff–Appellee,

v.

Dennis WHITT, individually and in his official capacity and The Town of Lake Park, Defendants–Appellants.

Nos. 87–5556, 87–6112.

United States Court of Appeals, Eleventh Circuit.

Jan. 11, 1989.

Michael B. Davis, Davis, Critton, Hoy & Diamond, West Palm Beach, Fla., for The Town of Lake Park.

Michael J. Kennedy, Peterson & Fogarty, P.A., West Palm Beach, Fla., for Dennis Whitt.

James K. Green, Green, Eisenberg & Cohen, West Palm Beach, Fla., M. David Gelfand, Terry Albritton, New Orleans, La., for Frank Morgan.

Before HATCHETT and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal from a judgment based on a jury verdict for compensatory damages against The Town of Lake Park and Dennis Whitt, the Town manager, and for punitive damages against Whitt, together with attorneys' fees against both defendants.

STATEMENT OF THE CASE

The plaintiff, Frank Morgan, filed a complaint against Dennis Whitt ("Whitt") and the Town of Lake Park seeking damages for alleged deprivation of constitutional rights in violation of the First, Fifth and Fourteenth Amendments, under color of state law, and wherein he also sought damages in a pendent state claim for alleged defamation by defendant Whitt. Following the trial, the jury concluded that the plaintiff was entitled to compensatory damages of $37,500 against both defendants under 42 U.S.C. § 1983 and compensatory damages of $1,000 against Whitt under the pendent defamation claim. The jury also found in favor of punitive damages against Whitt alone for $9,000. The Town and Whitt duly filed their notice of appeal from this judgment. This is the appeal No. 87-5556.

Subsequently, Morgan filed a motion for the allowance of attorneys' fees and costs and the trial court granted plaintiff fees and costs against defendants in the amount of $44,670.88. The defendants duly appealed from this judgment and this appeal is No. 87-6112. This Court subsequently consolidated the two appeals for consideration by this Court.

A. APPEAL IN NO. 87-5556

(1) *Statement of Facts*

The jury had sufficient evidence before it to have believed that the following occurred:

Whitt was Town manager of Lake Park from February 17, 1982 to sometime late in 1986. He first met Morgan in March, 1982, while Morgan was campaigning for a mayoral candidate who was subsequently elected. During Whitt's incumbency as Town manager, he performed certain Town matters in a way that was strenuously opposed by Morgan. As a result, Morgan criticized Whitt repeatedly, both verbally and as a writer of a weekly column in a local weekly

newspaper, Weekday. He accused Whitt of violating the city code and likened some of the actions taken by Whitt as being reminiscent of the time when Hitler came to power with the Nazi government in Germany.

During the years in question, Morgan was active in publicly supporting several candidates for Town offices. He was a former resident of Pennsylvania who moved to Florida in 1978. In Pennsylvania he had held political office for a number of years as a township supervisor and mayor of Schwenksville. At the time here relevant, it was clear from undisputed evidence that he had become a public figure within the meaning established by the Supreme Court, in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

As stated by the appellee:

In Lake Park, the Town Manager is empowered "[t]o see that the laws and ordinances are enforced." Town of Lake Park Charter art. VI, § 3(a) ... Indeed, the Charter makes him the "administrative head of the municipal government under the laws of the Town." Town of Lake Park Charter art. VI, § 1. More specifically, the Town Manager has the power to appoint and remove, subject to confirmation by the Town Commission, "all subordinate officers" of the Town, except the Town Attorney and Town Auditor. Town of Lake Park Charter art. VI, § 3(e).

On January 31, 1985, Whitt, accompanied by a Sgt. Tice, of the Town's police department, started for Auburn, New York to investigate the truth of a claim made by an employee of the Town police department that she had graduated from high school.

Their investigation discovered that this statement in the employee's application was false. At about the time the trip was to be executed, Whitt discovered that they would have to change planes in Philadelphia in order to fly to Syracuse on the way to Auburn. Thereupon, he and Tice took a stopover in Philadelphia, on their own time.

Whitt charged the couple of days of stopover against his annual leave and Tice took his stopover time as comp time. They rented an automobile in Philadelphia and drove to Schwenksville where they then sought to get information which Whitt hoped to use to counter the actions of Morgan which were intended to vilify Whitt. The airplane fare to Syracuse was increased by some $400 by reason of the stopover in Philadelphia. While Whitt charged the roundtrip fares to the Town, he testified that he did not know of the fact that the stopover added to that cost. Whitt and Tice paid their own expenses while on the sidetrip to Schwenksville, including an overnight stay in Philadelphia.

Upon arriving in Schwenksville, Whitt and Tice went to the office of a local newspaper, The Independent, and spoke to the person in charge, Lynn Nyce. She stated then that there was no one there who was authorized to let them see the back numbers of the newspaper. During their discussion, Whitt made a statement to the effect that Morgan had become involved previously in the Schwenksville area in some sort of land development scheme and that the properties he owned had mysteriously burned.[1]

Whitt presented his business card as city manager of the Town of Lake Park and Tice showed his police I.D. both to the newspaper people and later to the officials of Schwenksville on whom they called next.

---

[1] The testimony of Ms. Nyce at this point was as follows:

A. He went on to say—he called Mr. Morgan a crook. He said that he planned to remove him from public service, and he was going to to do that by getting enough information on him to put him in jail.

Q. Did he use the words, put him in jail, or say something more specific, if you can remember?

A. He said, we're going to get enough information on him to put his ass in jail.

Q. Did he say anything else to you?

A. A number of things. That they had been visiting public places in the area. One that was mentioned was the Limerick Diner, which is about ten minutes away.

He said that they had been questioning people, and that people that knew of Mr. Morgan, didn't have anything nice to say about him.

At the town hall, they had access to town minutes and had conversations with the mayor, the chief of police, other town officials and a newspaper man. The latter testified on deposition that after the meeting at the city hall, he had the impression that Morgan was in deep trouble. He stated, however, that this was of no surprise to him because of his "knowledge of Mr. Morgan." He stated: "As I say, I knew Mr. Morgan. For someone to come and say Mr. Morgan was in trouble in another state or town, would be no surprise to me."

After the sidetrip to Schwenksville, Whitt and Tice continued to Syracuse and then Auburn, New York, where they investigated the educational status of a Town employee because some doubt had arisen whether she had truthfully stated that before her employment, she had graduated from high school in Albany. This was dealt with by both Whitt and Tice as a criminal investigation for the Town of Lake Park.

Morgan testified that after he had learned about the trip to Schwenksville, he had become fearful for his safety, saying that he was afraid his home might be bombed or that he might actually be killed, that it left him uneasy and unable to sleep normally. He thereafter, however, continued to write his weekly column and he later supported other persons, including his daughter, for election to the Town council.

## (2) Issues on Appeal

I. Did the trial court err in not granting the motion of the Town of Lake Park for a judgment n.o.v. because, either

(a) Whitt was not the final policymaker of the Town as to actions which were the subject of this action, or

(b) Because Whitt's actions were not shown to have been taken under the color of state law?

II. Did the trial court err in not granting the defendant' Whitt's motion for judgment n.o.v. at the conclusion of the case because either

(a) There was a failure by the plaintiff to show that the alleged damage was caused by action taken under color of state law, or

(b) Because there was a failure to establish by clear and convincing evidence that Whitt had acted with actual malice?

## (3) Discussion

(a) Liability Under Section 1983

(1) *Liability of The Town of Lake Park Under Section 1983*

■ The jury found both Whitt and the Town liable to Morgan on the counts of the complaint that were based on 42 U.S.C. § 1983. That Section provides as follows:

*Civil action for deprivation of rights*

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

The Supreme Court, in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), held for the first time that a municipality could be held liable as a person under certain circumstances under Section 1983. The Court there said:

We conclude, therefore, that a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents [on the theory of *respondeat superior*]. Instead it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts *may fairly be said to represent official policy*, inflicts the injury that the government as an entity is responsible under Section 1983.

436 U.S. at 694, 98 S.Ct. at 2037–2038.

The first question raised by this appeal, therefore, is whether Whitt's actions amounted to an "execution of a govern-

ment's policy or custom," as made by one "whose edicts or acts may fairly be said to represent official policy."

Our consideration of this question is aided by the Supreme Court's later decision in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Referring to the *Monell* case, the Court in *Pembaur* said:

> The conclusion that tortious conduct, to be the basis for municipal liability under § 1983, must be pursuant to a municipality's "official policy" is contained in this discussion. The "official policy" requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality" —that is, acts which the municipality has officially sanctioned or ordered.

106 S.Ct. at 1298 (footnote omitted.)

While appellee strongly argues that Whitt was the final authority of the Town of Lake Park in determining official policy of the Town, he completely fails to establish what "policy" the Town could have with respect to the investigation of a private individual not in any way connected with the Town. Not only did the plaintiff fail to prove any such policy, but it is beyond this Court's imagination to discern any such policy of any municipality.

The trial court therefore erred in charging the jury over defendant's objection that:

> The court instructs you as a matter of Florida law, that the defendant Whitt possessed final authority to establish municipal policy *with respect to his actions which are the subject of this lawsuit,* and that the Town of Lake Park is liable for his actions, if you find the actions to have been wrongful.

(Emphasis added.)

As we have stated above, this charge was incorrect not only because there was

substantial dispute as to whether Whitt was purportedly acting in an official capacity but more especially because no municipal policy was established with respect to the sort of action that Whitt was admittedly engaged in.

We conclude, therefore, that the trial court erred in not granting judgment n.o.v. for the Town because of the failure of the plaintiff to establish the municipality's liability under the standards of *Pembaur* and *Monell.*

(2) *Liability of Whitt Under Section 1983*

■ As conceded by the appellant, a public official may act under color of state law—as required to satisfy the predicate for liability under 42 U.S.C. § 1983—even if he is not acting *pursuant* to a state law if, in performing a wrongful act which deprives another of his constitutional rights, the official is able to do so by virtue of the position he holds. *Brown v. Miller,* 631 F.2d 408 (5th Cir.1980).[2] However, as indicated by *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the principle involved in such a situation which is characterized as the "misuse of public power" situation is that the official who acts without legal authority is able to do so only because he is "clothed with the authority of state law." 365 U.S. at 184, 81 S.Ct. at 482, citing *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368.

There is nothing here in the record to indicate that Whitt was clothed with the power by the Town of Lake Park to make the alleged defamatory statements about Morgan. His authority, as Town manager, if any, had no effect on what he had to say while visiting Schwenksville or upon his return to Lake Park, and that is what he is here being sued for. *See Delcambre v. Delcambre,* 635 F.2d 407, 408 (5th Cir.1981) (per curiam) (sheriff not acting under color of law when he assaulted sister-in-law).

We also conclude, therefore, that defendants were entitled to a judgment n.o.v. on

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this Court adopted as

precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

**1500**

the § 1983 counts because of a failure to establish that any conduct of Whitt that was deleterious to the plaintiff was done under color of state law.

### (3) *Whitt's Liability on Pendent State Claim*

Whitt's principal contention in appealing from the verdict and judgment on the pendent state defamation claim is that the proof below was totally without a showing of actual malice by him in his statements. As pointed out before, it is clear that Morgan was a public figure since he "thrust himself into the vortex of [a] public issue." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 353, 94 S.Ct. 2997, 3013, 41 L.Ed.2d 789 (1974). The First Amendment, therefore, requires that Morgan prove by clear and convincing evidence that the statements were false and made with actual malice. *Id.* at 342, 94 S.Ct. at 3008. In *New York Times v. Sullivan, supra,* the Court defined "actual malice" as a statement made "with knowledge it was false or with reckless disregard of whether it was false or not." 376 U.S. at 280, 84 S.Ct. at 726.

Whatever statements were made by Whitt during his visit to Schwenksville, Pennsylvania or were published by him upon his return to the Town of Lake Park, so far as anything in the record discloses, represented his honest belief. The plaintiff made no effort to show that the comments made by Whitt were false. In a general way it may be argued that he had a purpose and intent to find whatever unsavory things he could about Morgan. This does not, it seems to us, constitute the actual malice in the making of *false* defamatory statements that was defined by the Court in *Sullivan.*

We conclude, therefore, that the trial court erred in not granting Whitt's motion for judgment n.o.v. on the pendent state defamation claim.

The judgments are therefore REVERSED.

### B. APPEAL IN NO. 87–6112

This is an appeal by the appellants from the grant of attorney's fees against both appellants by the trial court. The appeal is taken to protect the interests of appellants if this Court reverses the trial court's judgments in their favor.

Since we have reversed the judgments against Whitt and the Town, Morgan cannot claim to be the "prevailing party" under 42 U.S.C. § 1988.

The judgment for attorney's fees and costs is REVERSED.