United States Court of Appeals,

Eleventh Circuit.

No. 95-8866.

Mary Elizabeth ALMAND, Plaintiff-Appellee,

Joann Warren, Plaintiff-Appellee,

v.

DeKALB COUNTY, GEORGIA and DeKalb County Department of Public Safety, et al., Defendants-Appellees,

Floyd Bryant, Detective in His Individual and Official Capacity, Defendant-Appellant.

Jan. 24, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:92-CV-1958-RCF), Richard C. Freeman, Judge.

Before EDMONDSON, Circuit Judge, FAY, Senior Circuit Judge, and ALDRICH[*], Senior District Judge.

EDMONDSON, Circuit Judge:

This appeal on qualified immunity raises a question about when a police officer is or is not acting under color of state law for the purpose of 42 U.S.C. § 1983. We conclude that color of state law has not been shown and reverse the denial of summary judgment to the defendant.

I. *Facts*[1]

In July 1990, Plaintiff-Appellee Mary Almand (Almand)

---

[*]Honorable Ann Aldrich, Senior U.S. District Judge for the Northern District of Ohio, sitting by designation.

[1]Most of the "facts" we recite are only assumed facts—resolving disputes in Plaintiff's favor and giving Plaintiff the benefit of all reasonable inferences—for the purposes of reviewing a summary judgment decision. A trial might show the actual facts to be different from some facts we set out here. *See generally Rodgers v. Horsley,* 39 F.3d 308, 309 (11th Cir.1994). Defendant-Appellant Bryant denies the wrongdoing.

discovered that her daughter, Monique, was missing from home.[2] While posting and passing out fliers near a convenience store in Atlanta, Georgia, Almand first met the defendant, Floyd Bryant (Bryant), a police officer of the DeKalb County Police Department.[3] Bryant, who was not in uniform, approached Almand in the parking lot of the store and asked her why she was there. Almand told him that she was looking for someone, and Bryant showed her his badge. Almand then revealed that she was searching for her daughter. Bryant offered his assistance as a police officer in finding Almand's daughter on the condition that Almand go out on a date with him. Almand refused the date, but asked nonetheless for his help in finding her daughter. Bryant obtained Almand's phone number so that he could contact her if information turned up about Monique. Almand and Bryant later had several telephone conversations about Almand's daughter.

Approximately one week after her disappearance, Monique returned home with the help of the Atlanta Police Department. That same day, Almand related to Bryant what her daughter had been through. Bryant indicated that he had an idea of where Almand's daughter had been held and who had raped her.

The Atlanta Police Department later told Almand that things like those which happened to her daughter occur often in the area

---

[2] Monique had apparently gone with a neighbor named Tree to what Monique thought was an audition for a concert. According to Almand, however, Tree took Monique to a hotel where she was held against her will and raped by two men. After several days, Monique was able to call her mother, tell her where she was, and have her mother send the Atlanta police to pick her up.

[3] Although a DeKalb County Police Officer at the time of the events herein described, Floyd Bryant has since resigned.

and that nothing could probably be done to locate the persons responsible for her daughter's rape.  About one week after Monique's return home, Bryant called Almand and offered to reveal important information about the rape of her daughter, information so sensitive it could cost him his job.  Bryant conditioned the disclosure on Almand's agreeing to have sex with him.  Almand agreed but declined to go through with it when Bryant arrived at her apartment.

Despite Almand's rejection of his demand for sexual favors, Bryant agreed to continue helping Almand investigate her daughter's rape.  This time, however, his offer was contingent upon Almand agreeing to help Bryant expose a "dirty cop," a specific DeKalb Officer.  Bryant said he believed that this other police officer was—among other things—connected with the persons who raped Almand's daughter.  Almand agreed to help Bryant, which she says she did.

Later, in August 1990, Bryant showed up at Almand's apartment breathing hard and sweating.  He asked to come in to talk with her on urgent matters about her daughter.  Almand admitted Bryant.  Once inside the apartment, Bryant asked Almand why she was leading him on;  and he began making sexual advances.  Almand asked Bryant to leave;  and although he declined at first, he eventually agreed to leave.  Bryant went out the door, and Almand closed it behind him.

From outside, Bryant then forced open the closed door with such shock that wood broke off the door.  Having pushed open the door, Bryant reentered Almand's apartment, physically struggled

with her, and forcibly raped her.  No report was made to the police at the time.

A few days later, Almand was arrested for drug trafficking.[4] The case against her was eventually nolle prossed because, according to the Superior Court, "Investigative Officer [Bryant was] found to have engaged in conduct which was inappropriate under the circumstances and therefore compromised the State's ability to prove its case against [Almand]."

## II. *Procedural Background*

Almand filed her original complaint against Defendants Bryant, DeKalb County and several other defendants in August 1992.  Later, Almand filed an amended complaint adding additional claims, an additional defendant, and an additional plaintiff.  As amended, Almand's complaint, invoking 42 U.S.C. § 1983, covered about 44 pages and alleged the violation of constitutional rights protected by the Fourth and Fourteenth amendments, the violation of state and federal Racketeer Influenced Corrupt Organization statutes,[5] and various state tort law claims.

All defendants moved for summary judgment.  The district court denied summary judgment to Bryant.  Bryant appealed the district court's denial of his motion for summary judgment;  the motion had been based on qualified immunity.  The substance of Almand's claim before us is the rape at her apartment.

---

[4]Almand contended that her arrest was for conduct she undertook as part of her agreement to help Bryant expose the other police officer.  Bryant denied that Almand was working with him.

[5]The District Court dismissed all state and federal RICO claims.

III. *Discussion*

Federalism is important to this case. Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights. *Whiting v. Traylor,* 85 F.3d 581, 583 (11th Cir.1996) (citations omitted). As the Supreme Court has cautioned, the "constitutional shoals that confront any attempt to derive from congressional civil rights statutes a body of general federal tort law," demand that we vigilantly safeguard against converting section 1983 into "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) (internal citations omitted), *reh'g denied,* 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976). Thus, section 1983 must not supplant state tort law; liability is appropriate solely for violations of federally protected rights. *Baker v. McCollan,* 443 U.S. 137, 145-46, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).

A successful section 1983 action requires that the plaintiff show she was deprived of a federal right by a person acting under color of state law. *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir.1992) (citing *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155-56, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978)). We accept that, under certain circumstances, a rape of a person by a police officer or other state actor could violate the Constitution. *See Parker v. Williams,* 862 F.2d 1471 (11th Cir.1989) (involving rape by uniformed deputy sheriff of woman in his custody because of his representation that her bail had been revoked and that she would

have to return to jail with him); *see also Dang Vang v. Vang Xiong X. Toyed,* 944 F.2d 476, 479-80 (9th Cir.1991) (upholding jury's determination that defendant acted under color of state law when he, as employee of Washington State Employment Security office, raped women looking for employment when meeting with them under the pretext of providing services pursuant to his state job). Here, however, Bryant was not acting under color of state law at the pertinent time. Almand, therefore, cannot make out the elements of her section 1983 case, and summary judgment must be granted to Bryant on the section 1983 claim.

A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state. *Edwards v. Wallace Community College,* 49 F.3d 1517, 1522 (11th Cir.1995) (citing *West v. Atkins,* 487 U.S. 42, 48-50, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988)). Not all acts by state employees are acts under color of law. *Id.* at 1523. "The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Id.* (citing *Monroe v. Pape,* 365 U.S. 167, 183-84, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), *overruled on other grounds by Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

Ms. Almand first argues that Officer Bryant admitted that he was acting under color of state law in his answer to the complaint. Paragraph 3 of Almand's complaint states in relevant part:[6]

---

[6]In both her original and amended complaint, Almand includes this exact paragraph. In her original complaint, this allegation is denoted as Paragraph 3; in her amended complaint it is

> Defendant, FLOYD RICHARD BRYANT, was at all times herein a law enforcement officer certified by the State of Georgia and employed by the County of DeKalb, Georgia as a police officer whose conduct described herein was taken under color of state law ...

In Bryant's answer to Almand's complaint, he states, "This defendant admits the allegations of paragraph 3." Bryant's "admission," however, does not end our color-of-state-law inquiry.

Whether conduct constitutes state action[7] is no simple question of fact. *See Blum v. Yaretsky,* 457 U.S. 991, 996-98, 102 S.Ct. 2777, 2782, 73 L.Ed.2d 534 (1982) (describing the question of whether there is state action as question of law); *Cuyler v. Sullivan,* 446 U.S. 335, 342 n. 6, 100 S.Ct. 1708, 1715 n. 6, 64 L.Ed.2d 333 (1980) (determining if state action exists is resolution of question of law); *see also Duke v. Smith,* 13 F.3d 388, 392 (11th Cir.1994) (reviewing de novo, as a mixed question of law and fact, district court's determination that private actor was not sufficiently intertwined with government entity to be engaged

---

Paragraph 4. Bryant answered each of Almand's complaints, and his answer to this allegation was the same both times.

[7]We have noted that the concepts of action under color of state law and state action are coterminous. *Burrell v. Board of Trustees of GA. Military College,* 970 F.2d 785, 790 n. 13 (11th Cir.1992), *cert. denied,* 507 U.S. 1018, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993). While the Supreme Court, in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 2752 n. 18, 73 L.Ed.2d 482 (1982), left open the theoretical possibility that action under color of state law might not always constitute state action, the example given by the Court of a private person applying a state statute has no relevance to our case. "[T]he Court pointed out that "it is clear that in a § 1983 action brought against a state official, [as in the present case,] the statutory requirement of action under color of state law and the state action requirement ... are identical.' " *Burrell,* 970 F.2d at 790 n. 13 (quoting *Lugar,* 457 U.S. at 929, 102 S.Ct. at 2749).

in state action).  As such, Plaintiff's pleading of the legal conclusion on color of state law in the complaint and Defendant's admission in the answer are of questionable importance.  The answer admits the facts alleged in Paragraph 3, but we wonder whether the admission has effect for conclusions of law that are set out in the complaint.

More important, construing Bryant's answer to Paragraph 3 of Almand's complaint as a binding admission of the color-of-state-law element would violate Fed.R.Civ.P. 8(f)'s mandate to construe all pleadings in a way that does "substantial justice."  In construing Rule 8(f), the Supreme Court, in *Maty v. Grasselli Chemical Co.,* 303 U.S. 197, 199-201, 58 S.Ct. 507, 509, 82 L.Ed. 745 (1938), wrote that "[p]leadings are intended to serve as a means of arriving at fair and just settlements of controversies between the litigants.  They should not raise barriers which prevent the achievement of that end."

Viewing Bryant's admission to Paragraph 3 of Almand's complaint in the context of all of the pleadings,[8] we are confident that Almand was put on notice that the issue of state action was disputed.  For example, in his answer, Bryant expressly denied that he was at Almand's residence on the pertinent date, that he broke in her door, and that he raped her.  He also expressly asserted in his answer that the complaint stated no cause of action under the laws or the Constitution of the United States.  In addition, in Bryant's brief filed with and in support of his motion to the

---

[8]"A pleading ... if possible, will be construed to give effect to all its averments."  5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1286 (1990).

district court for summary judgment, Bryant stated that, if Almand's complaint could be construed as alleging a constitutional violation against him, "no action by him was taken under color of state law, for purposes of § 1983 liability."

In the light of Bryant's denial of the central factual components of Almand's case, the most he can justly be said to have admitted is that when he did not go to Almand's house, did not break down her door and did not rape her, he was acting under color of state law. We believe Almand was neither mislead nor surprised unfairly about whether color of state law was a question in dispute when summary judgment was being sought by Bryant. We, therefore, conclude that Bryant's answer to Almand's complaint does not settle the state-action question.

Here, the assumed facts show that Bryant was acting as a private person, not a state actor under color of state law, when he forced his way into Almand's home and, overcoming her resistance by force, raped her. On the day of the rape, Bryant initially gained entry to Almand's apartment on the pretense of discussing police business with her—the progress of the investigation into Almand's daughter's rape. Bryant then made sexual comments and advances toward Almand, and she demanded that he leave her apartment.

Bryant complied with Almand's request and left her home. Almand *fully closed* the front door. Having been excluded from Almand's apartment, Bryant then burst open the front door with such force that the door was damaged;[9] and he committed the rape inside

_____

[9]The extent of the force is not critical to us, but the fact of an unconsented-to entry which was accomplished by some degree of physical force against a barrier is important.

the apartment.

Bryant's initial entry into Almand's apartment probably was conducted under color of state law: he gained access to Almand's apartment because of his status as a police officer and his proffer of information about Almand's daughter.[10] But then, Almand excluded Bryant from her apartment and closed the door completely.

When Bryant reentered the apartment by forcibly breaking in, he was no different from any other ruffian.[11] Bryant's act of breaking into the apartment and, by force, raping Almand was a private act not accomplished because of "power possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law." *West,* 487 U.S. at 59, 108 S.Ct. at 2255 (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941), *reh'g denied,* 314 U.S. 707, 62 S.Ct. 51, 86 L.Ed. 565 (1941)); *cf. Bennett v. Pippin,* 74 F.3d 578, 589 (5th Cir.1996) (concluding rape of criminal suspect by sheriff was under color of state law when rape victim knew sheriff was investigating her case and where sheriff overcame her resistance by intimidation linked to his authority: "I can do what I want, I'm the sheriff"), *cert. denied,* --- U.S. ----, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996); *Dang Vang,* 944 F.2d at 479 (holding that jury could have reasonably concluded, from expert testimony showing plaintiffs—as Hmong refugees—were "in awe" of

---

[10]We note, by the way, that Bryant was not in uniform and was off-duty at the time of these events.

[11]While not every grievous offense against morality is a violation of the Federal Constitution, we believe the conduct alleged about Bryant would amount to torts and crimes, including burglary, under Georgia law.

government officials, that the "defendant used his government position to exert influence and physical control" over the plaintiffs). Considering that Bryant gained entry to the apartment by forcibly breaking in, any thug or burglar could have committed the same violent acts. Once Bryant resorted to sheer force to break, to enter, and to rape, his status as a police officer had no bearing on his wicked behavior.

Our color-of-state-law conclusion requires us to engage in line drawing. But, in the words of Justice Holmes, "the great body of the law consists in drawing such lines," *Schlesinger v. Wisconsin,* 270 U.S. 230, 241, 46 S.Ct. 260, 262, 70 L.Ed. 557 (1926) (Holmes, J., dissenting); "[n]either are we troubled by the question where to draw the line. That is the question in pretty much everything worth arguing in the law. Day and night, youth and age are only types." *Irwin v. Gavit,* 268 U.S. 161, 168, 45 S.Ct. 475, 476, 69 L.Ed. 897 (1925) (Holmes, J.). In the circumstances of this case, we draw the line at the front door of Almand's apartment. When Bryant, by physical force, broke into Almand's residence, he was not then gaining entry by virtue of any authority he might have been given by the state to act as a police officer.

We conclude that Bryant was not acting under color of state law when he broke into Almand's apartment and raped her. His conduct (if he did the things alleged) was the act of a private citizen and did not violate the Constitution.[12] So, Bryant is due

---

[12]In qualified immunity cases, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established' at the time the defendant acted [that is, the qualified immunity question] is the determination of whether the plaintiff has asserted a violation

summary judgment. The district court's denial of summary judgment to Bryant on this section 1983 count is reversed. The case is remanded for further proceedings not inconsistent with this judgment.

REVERSED and REMANDED.

ANN ALDRICH, Senior District Judge, dissenting:

I respectfully dissent. If Floyd Bryant raped Mary Almand,[1] there is at least a genuine issue as to whether he did so under color of state law. Therefore, I would affirm the district court's denial of Bryant's motion for summary judgment.

## I.

In order to prevail in an action brought under 42 U.S.C. § 1983, a plaintiff must show that (1) a person acting under color of state law (2) deprived her of a right secured by the United States Constitution or other federal laws. *Duke v. Smith,* 13 F.3d 388, 392 (11th Cir.1994). The majority apparently concedes that, if Bryant did rape Almand under color of state law, then he violated her constitutional right to bodily integrity. *See Albright v. Oliver,* 510 U.S. 266, 271-73, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (citations omitted); *Doe v. Taylor Indep. School Dist.,* 15 F.3d 443, 450-52 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994); *Stoneking v. Bradford Area School*

---

of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991), *reh'g denied,* 501 U.S. 1265, 111 S.Ct. 2920, 115 L.Ed.2d 1084 (1991).

[1]As the majority correctly observes, for the purposes of our review of the district court's denial of Bryant's motion for summary judgment, we must assume that Bryant did, in fact, rape Almand.

*Dist.,* 882 F.2d 720, 726-27 (3rd Cir.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990); *Parker v. Williams,* 862 F.2d 1471, 1474 (11th Cir.1989). Because there is a genuine issue as to the circumstances under which Bryant may have raped Almand, there is a genuine issue as to whether he deprived her of a constitutional right.

## II.

Nevertheless, the majority concludes that Bryant is still entitled to summary judgment because his actions in raping Almand were not taken under color of state law. I respectfully disagree.

A defendant acts under color of state law when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quotation omitted). Hence, a defendant acts under color of state law when he abuses a position given to him by the state. *Id.* at 50, 108 S.Ct. at 2255-56; *Morgan v. Tice,* 862 F.2d 1495, 1499 (11th Cir.), *cert. denied,* 493 U.S. 813, 110 S.Ct. 61, 107 L.Ed.2d 28 (1989). Here, I believe that there is a genuine issue of material fact as to this question.

Viewing the facts in a light most favorable to Almand, it appears that Bryant was able to rape Almand only because of his abuse of his position as a police officer. As the majority notes, Bryant initially obtained access to Almand's home on the day of the rape on the pretense of discussing police business with her. Although the facts are not entirely clear on this point, it appears from Almand's deposition that she unlocked her door for Bryant and

admitted him to her home. She testified that she had a double-locked door which could only be opened with a key, and that Bryant came through that door. She also testified that after Bryant entered, she put the key on top of her stereo speaker.[2] A reasonable finder of fact could infer that she unlocked the door for Bryant. The majority concedes that if Bryant had raped Almand at that point, his actions probably would have been taken under color of state law.

Bryant did not rape Almand at that point, however. Instead, he complied with her request to leave and walked out the door. Almand shut the door behind him and turned to get the key to lock the door. At this point, *before Almand could lock the door,* Bryant slammed it open, entered, and raped her.

The majority holds that once Bryant left and then "forcibly" broke in, he was no different than "any other ruffian." If Bryant had broken through a locked door, I might accept this conclusion. If that were the case, Bryant's position as a police officer would have afforded him no advantage in his alleged rape of Almand. There is evidence, however, that Bryant merely had to open an unlocked door, which Almand had unlocked for him specifically because he was a police officer.[3] In other words, construing the

---

[2]At another point, Almand testified that Bryant put the key on her speaker. At this stage in the proceedings, however, we must resolve all factual discrepancies in favor of Almand.

[3]It is also possible, but not clear from Almand's testimony, that Bryant opened the door with such force that it did not matter that the door was not locked. If he did, then I would agree that Bryant did not act under color of state law. That fact is not clear, however, and we must resolve all factual disputes in favor of Almand.

evidence in Almand's favor, a reasonable finder of fact could find that Bryant's abuse of his position as a police officer induced Almand to unlock the door so that he could rape her. Thus, Bryant's abuse of his position as an officer of the state made his rape of Almand possible, and he acted under color of state law.

This case is analogous to *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476 (9th Cir.1991). In *Dang Vang,* the defendant was a state employee who was responsible for interviewing Hmong refugees and finding employment for them. On the pretense of taking women job-hunting, he lured them to a motel and raped them. Of course, "any other ruffian" could have told the women he had a job for them in order to lure them to a motel and rape them. As the Ninth Circuit noted, however, the plaintiffs came into contact with the defendant because of their need for employment, and the jury could have reasonably concluded that "the defendant used his government position ... in order to sexually assault them." *Id.* at 480. Similarly, Almand came into contact with Bryant because of her need for police help, and Bryant used his position to gain access to her home in order to rape her. Again, "any other ruffian" could have raped Almand, but Bryant's status as a police officer made it possible for him to do so in a way that another could not.

### III.

On the specific facts of this case, I conclude that, assuming Bryant did rape Almand, there is at least a genuine factual issue as to whether he did so under color of state law.[4] Accordingly, I

---

[4]Because I reach this conclusion, there is no need for me to consider whether Bryant's admission that he acted under color of state law is of any import.

would affirm the district court's denial of Bryant's motion for summary judgment.  I respectfully dissent.