[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-14989
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 27, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00304-CR-J-25-TEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARTHUR PICKLO,
a.k.a. Tony Tozzi,
a.k.a. Art Picklo,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 27, 2006)**

Before DUBINA, BLACK and HULL, Circuit Judges.

PER CURIAM:

Arthur Picklo appeals his convictions by a jury for deprivation of civil rights by one acting under the color of law, in violation of 18 U.S.C. § 242, interference with commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, and obstruction of justice by attempted murder, in violation of 18 U.S.C. § 1512(a)(1)(C). Picklo asserts the evidence was insufficient to prove: (1) he was acting under "color of law" when he deprived the victim, Guadalupe Frausto, of his civil rights; (2) his robbery offense affected interstate commerce; and (3) he attempted to kill Frausto to prevent Frausto from reporting him to federal officials. We conclude the evidence at trial supported the jury's convictions, and affirm.

## I.  STANDARD OF REVIEW

We review the sufficiency of the evidence de novo, viewing the evidence and all reasonable inferences in favor of the government and the jury's verdict. *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005). The convictions must be affirmed unless, under no reasonable construction of the evidence, could the jury have found the defendant guilty beyond a reasonable doubt. *Id.* Credibility determinations are the sole province of the jury. *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997).

II. DISCUSSION

A. *Color of law*

Picklo, a former investigator with the Florida Department of Insurance, asserts there was not sufficient evidence for the jury to find he acted under color of law in violation of 18 U.S.C. § 242 when he robbed and shot the victim because robbery was outside the scope of his duties as an investigator, he never identified himself as a law enforcement officer, and he was motivated purely by financial gain. To prove a defendant violated 18 U.S.C. § 242 by acting "under color of law" to deprive another of "any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States," the government must establish beyond a reasonable doubt that (1) the defendant's conduct deprived the victim of rights secured or protected by the Constitution or federal law; (2) the defendant acted willfully; and (3) the defendant acted under color of law. *United States v. Lanier*, 117 S. Ct. 1219, 1224 (1997).

The Supreme Court has held the term "color of law" is to be given the same meaning in the context of criminal prosecutions under 18 U.S.C. § 242 and civil suits under 42 U.S.C. § 1983. *Monroe v. Pape*, 81 S. Ct. 473, 482-84 (1961), *overruled on other grounds*, *Monell v. Dep't of Soc. Servs. for New York*, 98 S. Ct. 2018, 2022 (1978). Determining whether a defendant acted under color of law

3

involves an assessment of the totality of the circumstances. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303-04 (11th Cir. 2001). Color of law means "pretense of law," and it does not necessarily mean under authority of law. *United States v. Jones*, 207 F.2d 785, 786-87 (5th Cir. 1953). A state official may act under color of law even when engaging in an illegal activity. *See id.* at 786 (holding "paradoxical as it may seem," a state prison official was whipping prisoners under color of law although doing it in violation of law).

"Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law." *Williams v. United States*, 71 S. Ct. 576, 578 (1951) (holding a private detective who took an oath as a special police officer was acting under color of law when he "flash[ed] his badge" while assaulting his victims). Further, it is not significant to the color of law analysis that the defendant's misuse of power "was motivated solely for personal reasons of pecuniary gain." *Brown v. Miller*, 631 F.2d 408, 411 (5th Cir. 1980) (color of law analysis under 42 U.S.C. § 1983). "[T]he lack of outward indicia suggestive of state authority–such as being on duty, wearing a uniform, or driving a patrol car–are not alone determinative of whether a police officer is acting under color of state law." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989).

Here, the evidence supported Picklo's conviction for deprivation of civil rights under 18 U.S.C. § 242. Frausto testified Picklo held up a "police badge" and said he was "with the North Florida Investigators," or "something like that." In addition, Frausto testified Picklo said, "By the way, Johnny is working with us," indicating there was an undercover operation. Moreover, Frausto believed Picklo was a law enforcement officer of some type, and he feared he would be arrested due to the check-cashing scheme. Frausto believed he had to follow Picklo's instructions because Picklo was a law enforcement officer. Frausto followed Picklo off the interstate into a nearby neighborhood, and Picklo got into the passenger's seat of Frausto's vehicle. Picklo used his official status to gain entry into Frausto's vehicle. Therefore, the evidence establishes Picklo acted under color of law because he identified himself as a state investigator, flashed a badge, and used his official status to get Frausto to follow his instructions.

Picklo's reliance on *Almand v. DeKalb County*, 103 F.3d 1510 (11th Cir. 1997) is misplaced. In *Almand*, a police officer investigating the disappearance and rape of Almand's daughter told her he would reveal important information about her daughter's case if she would agree to have sex with him. *Id.* at 1512. One evening, the police officer knocked on Almand's door, and told her he needed to talk with her about her daughter. After Almand let the police officer in, he

5

began to make sexual advances, she declined, and he eventually agreed to leave. The police officer went out the door, and Almand closed it behind him. The police officer then forced the closed door open with such force that the wood broke off the door. He then reentered the apartment and raped Almand. Almand filed a complaint against DeKalb County pursuant to 42 U.S.C. § 1983. *Id.* At issue was whether the police officer acted under color of law when he forcibly entered Almand's apartment the second time. *Id.* at 1514-15. This Court noted that on the day of the rape, the police officer "initially gained entry into Almand's apartment on the pretense of discussing police business with her," and that the initial entry into Almand's apartment was probably conducted under color of state law because he gained access to the apartment due to his status as a police officer *Id.* at 1514-15. However, "[w]hen [he] reentered the apartment by forcibly breaking in, he was no different from any other ruffian." *Id.* at 1515. His "act of breaking into the apartment and, by force, raping Almand was a private act not accomplished because of power possessed by virtue of state law and made possible only because the wrongdoer was clothed with the authority of state law." *Id.* (quotations and citations omitted).

Here, Picklo gained access to Frausto's vehicle using his status as a law enforcement officer, similar to the police officer's first entry into the apartment in

6

*Almand*. Picklo did not break into Frausto's vehicle. Frausto followed Picklo's instructions because Picklo told him that he was an investigator and flashed a badge. If Picklo had not indicated he was a law enforcement officer or investigator of some type, Frausto would have had no reason to follow him. Accordingly, we conclude there was sufficient evidence for a jury to find Picklo was acting under color of law and affirm Picklo's conviction under 18 U.S.C. § 242.

B. *Robbery in violation of the Hobbs Act*

Picklo also asserts the evidence was not sufficient to convict him of interference with commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, because there is no evidence the robbery had an actual effect on interstate commerce. To prove a defendant violated the Hobbs Act, the government must establish the defendant committed a robbery that "in any way or degree obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 1951(a). We have held "[t]wo elements are essential for a Hobbs Act prosecution: robbery and an effect on commerce." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000).

"The government needs only to establish a minimal effect on interstate commerce to support a violation of the Hobbs Act." *Id.* We have held robbery or extortion of an individual violates the Hobbs Act when one of the following

7

conditions is met: "(1) the crime depletes the assets of an individual who is directly engaged in interstate commerce; (2) the crime causes the individual to deplete the assets of an entity engaged in interstate commerce; *or* (3) the number of individuals victimized or sums involved are so large that there will be a cumulative impact on interstate commerce." *United States v. Diaz*, 248 F.3d 1065, 1085 (11th Cir. 2001) (emphasis in original). In order to show a robbery depleted an individual's assets, it is sufficient to show the assets were "lessen[ed] in number, quantity, content, or force or in vital power or value." *Id.* at 1090.

Here, the evidence establishes Picklo's robbery affected interstate commerce by depleting the victim's assets. If the victim had not been robbed, he would have used the stolen funds to pay his employees and purchase supplies for his business that were shipped in interstate commerce. The victim regularly purchased nails and other supplies from a business that was directly engaged in interstate commerce. First Coast Fasteners purchased goods for resale that were shipped from Georgia to Florida and manufactured in Japan and the United Arab Emirates. Further, the owner of First Coast Fasteners testified that framing a house requires between $500 and $1500 in supplies. Although Frausto's crew completed the projects that were pending at the time he was shot, his assets were depleted for future projects, and he had fewer resources to spend on supplies at First Coast

8

Fasteners.  *See United States v. Jackson*, 748 F.2d 1535, 1536-37 (11th Cir. 1984) (holding, in a case where a defendant was convicted of violating the Hobbs Act by extorting $5,000 from a man who owned a construction company and customarily bought materials and supplies that had traveled in interstate commerce, that the extortion depleted assets to be used by a business connected with interstate commerce).  Picklo's robbery of Frausto depleted his assets that were used for his business because Frausto testified he would have used the stolen funds to purchase supplies that had traveled in interstate commerce.  Accordingly, we affirm Picklo's conviction under 18 U.S.C. § 1951.

C.  *Report of robbery to federal official*

Finally, Picklo contends the evidence does not support his conviction for obstruction of justice by attempted murder, 18 U.S.C. § 1512(a)(1)(C), because the evidence did not establish Picklo intended to prevent the victim from reporting the robbery to a federal official.  In order to prove a defendant obstructed justice by attempted murder, the government must establish beyond a reasonable doubt (1) the defendant attempted to kill someone; (2) with the intent; (3) to prevent his victim from reporting a federal crime to a federal official.  18 U.S.C. § 1512(a)(1)(C).  With respect to all § 1512 prosecutions, no state of mind need be

9

proved with respect to the fact the law enforcement official in question is a federal official. 18 U.S.C. § 1512(g)(2).

In *United States v. Veal*, 153 F.3d 1233, 1249-50 (11th Cir. 1998), we considered the federal nexus requirement for violations of 18 U.S.C. § 1512(b)(3), which prohibits, *inter alia*, (1) engaging in misleading conduct, (2) with the intent, (3) to prevent the communication of information regarding the commission of a *federal* offense to a *federal* law enforcement officer. We considered whether the defendants needed to know at the time of their conduct that their misleading information would be communicated to federal law enforcement agents or that the crime was a federal offense. *Id.* at 1248-49. We held the federal nexus element is the same under 18 U.S.C. § 1512(a)(1)(C), and the government need not show the defendant knew the federal nature of the underlying crime about which he provided false information or that he intended that a federal law enforcement officer receive the false information. *Id.* at 1249-50, 1252. We noted a conviction under § 1512(b)(3) "does not depend on the existence or imminency of a federal case or investigation but rather on the *possible* existence of a federal crime and a defendant's intention to thwart an inquiry into that crime." *Id.* at 1250 (emphasis in original). It was sufficient there was a "possibility or likelihood" the information would be relayed to federal officials. *Id.* at 1251.

10

Here, applying the analysis from *Veal*, the Government was not required to prove Picklo knew his robbery was a federal crime or that he intended to prevent the victim from reporting the crime to a federal official in particular. The possibility Frausto could have reported the crime to a federal official is sufficient, and that possibility existed in this case because he (1) knew federal agents were involved in the underlying investigation, and (2) the confidential informant who introduced Picklo to his victim was working for federal investigators. Accordingly, we affirm Picklo's conviction under 18 U.S.C. § 1512(a)(1)(C).

## III. CONCLUSION

The jury had sufficient evidence to convict Picklo of deprivation of civil rights by one acting under the color of law, in violation of 18 U.S.C. § 242, interference with commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, and obstruction of justice by attempted murder, in violation of 18 U.S.C. § 1512(a)(1)(C). We affirm his convictions.

**AFFIRMED.**

11