[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 18-14119

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ALEX HUNTLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 3:18-cr-00008-WKW-WC-1

_____

Before ROSENBAUM, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Alex Huntley appeals his conviction for deprivation of rights under color of law resulting in bodily injury, in violation of 18 U.S.C. § 242. On appeal, Huntley challenges the sufficiency of the evidence to support his conviction. After review, we affirm.

## I.    BACKGROUND FACTS

### A.  Offense Conduct

Huntley is a former lieutenant of the police department in Tuskegee, Alabama. In December 2014, while working an off-duty security detail at the Tuskegee municipal complex, he saw Edward Turk ride an all-terrain vehicle ("ATV") through the Tuskegee town square toward a local liquor store. He radioed the police department to request assistance in responding.

In response, Officer Justin Echols arrived in a marked patrol vehicle at the liquor store and stopped near Huntley and the ATV. Huntley was dressed in full uniform but had driven to the liquor store in his personal vehicle. When Turk came out of the liquor store, Huntley told him that he was not supposed to be riding an ATV in the town area. Huntley told Turk that he was not under arrest, but instructed him to sit in Officer Echols's patrol car while he wrote him a citation.

Turk sat down in the car but did not put his legs into the car, so Huntley put his hands on Turk's legs and attempted to push them into the vehicle. Turk stood up, Huntley pushed him again, and Turk punched Huntley in the side of the head. After Turk and Huntley had been wrestling for a minute or two, Officer Echols handcuffed Turk and placed him in the patrol car. Huntley told Officer Echols to take Turk to the jail and that he would handle everything.

Officer Echols drove Turk to the police station, and when they arrived, Turk, who was still handcuffed, complied with Officer Echols's command to exit the vehicle and walk toward the station. Huntley met them at the front door of the station and had a conversation with Turk. While they were standing outside, Huntley sprayed Turk with mace twice, even though Turk was still handcuffed, not making any threatening movements, and not attempting to escape. The mace burned Turk's eyes.

Huntley then took Turk inside the police station to the holding cell room,[1] where he tripped Turk and began beating him while he was on the ground. Officer Echols, Officer Cedric Craig, and four trainee officers either saw Huntley hitting and kicking Turk or heard Turk screaming while in the holding cell room. Huntley told the trainees to leave.

---

[1] The "holding cell room" was a room at the Tuskegee police station that had two temporary holding cells in it.

A few minutes later, Huntley walked Turk to the station's briefing room and placed him in a chair while the officers began to do paperwork to process his arrest. Turk was still handcuffed. At some point, Turk made a comment that Huntley did not like, and Huntley walked over to Turk, knocked him off his chair, and kicked him while he was on the ground. When the trainees saw Turk later in the briefing room, his face and eyes were swollen, he was spitting blood, and he had blood on his face.

Officer Echols drove Turk to the Macon County Jail and, once there, Turk requested medical attention. Audrey Peterson, an emergency medical technician, was called to the jail to examine Turk. When she got there, Turk's lip was bloody, he had bruises and scrapes on him, his eyes were red, and he told her that he was in pain all over his body. Peterson advised Turk to go to the hospital for further testing, which he did after he was released from the jail.

## B. Procedural History

An indictment charged Huntley with one count of deprivation of rights under color of law resulting in bodily injury, in violation of 18 U.S.C. § 242. Specifically, the indictment charged that Huntley willfully deprived Turk of the right to be free from the use of unreasonable force by one acting under color of law.

At trial, the government presented evidence of the facts recounted above, including, among other things, (1) testimony

from Turk, EMT Peterson, Officer Echols, Officer Craig, and four Tuskegee Police Department trainees who were at the police station on December 24, 2014; (2) the pants Turk wore that day, which had blood stains on them; and (3) pictures of Turk taken by his mother soon after the incident, in which he had chipped teeth, cuts, scratches, swollen wrists, and bruises.

At the close of the government's evidence, Huntley moved for a judgment of acquittal. Huntley's counsel argued that Turk was injured during the fight at the liquor store, not at the police station, and that Huntley had not used an unreasonable amount of force. The district court denied Huntley's motion. Huntley renewed his motion at the close of evidence.[2] After deliberation, the jury found Huntley guilty of the § 242 charge. The district court sentenced Huntley to 36 months of imprisonment, followed by 36 months of supervised release.[3]

## II. DISCUSSION

On appeal, Huntley argues that his § 242 conviction is not supported by substantial evidence.

[2] The district court did not make an express ruling on Huntley's renewed motion for a judgment of acquittal as to the § 242 count. However, it denied the renewed motion implicitly by stating that it would reserve ruling on Huntley's motion as to another count (which is not relevant to this appeal), as it had done in its earlier ruling.

[3] Huntley began his term of imprisonment on October 24, 2018, and was released from prison on May 13, 2021. In this direct appeal, he does not raise any sentencing issues.

To prove a violation of 18 U.S.C. § 242, the government must present evidence that the defendant acted (1) willfully and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States. *United States v. House*, 684 F.3d 1173, 1198 (11th Cir. 2012).[4]    The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from the use of excessive force during an arrest. *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 1871 (1989).    An officer violates the Fourth Amendment if he uses gratuitous force against an arrestee who is under control and not resisting.  *See Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (holding that an officer's use of force after the plaintiff was "arrested, handcuffed, and completely secure, and after any danger to the arresting officer as well as any risk of flight had passed" was excessive).

When reviewing sufficiency of the evidence, we view the evidence in the light most favorable to the government.  *United States v. Hunt*, 526 F.3d 739, 744 (11th Cir. 2008).  Evidence is sufficient to sustain a conviction if any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.

---

[4] This Court reviews *de novo* the sufficiency of evidence supporting a conviction.  *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011).  However, if a defendant raised specific challenges to the sufficiency of the evidence in the district court and raises a different sufficiency challenge on appeal, we review his new argument for plain error.  *See United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016).

*Id.* at 745.  "The evidence need not be inconsistent with every reasonable hypothesis other than guilt."  *Id.*  Rather, the jury may choose from several reasonable conclusions that could be drawn from the evidence.  *Id.*

Huntley argues that the government did not present evidence sufficient to prove that he was acting under color of law when he assaulted Turk or that Turk's injuries were caused by the assault at the police station, as opposed to the fight at the liquor store's parking lot.  We address these arguments in turn.

## A.  "Under Color of Law"

An act is "under color of law" for purposes of § 242 if it is effected by a law enforcement officer acting under pretense of law.  *House*, 684 F.3d at 1200.  Actions of officers who undertake to perform their official duties are included, whether the acts hew to the line of the officers' authority or overstep it.  *Id.*  Thus, a law enforcement officer acts under color of law "when he acts with authority possessed by virtue of his employment with the government," or when "the manner of his conduct . . . makes clear that he was asserting the authority granted him and not acting in the role of a private person."  *Id.* (quotation marks omitted).

In *Almand v. DeKalb County*, this Court held that a police officer was acting as a private person, not a state actor under the color of law, when he forced his way into a victim's home and assaulted her.  103 F.3d 1510, 1514 (11th Cir. 1997).  There, the

officer was acting under the color of law initially, when he came to the victim's home to speak to her about a police investigation. *Id.* But the officer left when the interview was finished. He only later gained entry to the victim's apartment by bursting through the front door with force. *Id.* We explained that the second entry to the victim's apartment, and the subsequent assault, were private acts not accomplished because of his role as a police officer, as any burglar could have committed the same violent acts. *Id.* at 1515.

Similarly, in *Butler v. Sheriff of Palm Beach County*, this Court concluded that a corrections officer who held a young man at gunpoint after finding him in her home with her daughter was not acting under color of law because the officer did not use her law enforcement position to gain access to the house. 685 F.3d 1261, 1267 (11th Cir. 2012). In addition, although the officer used the pistol that she was issued through her employment as a state officer, any adult without a felony record could lawfully possess a firearm, and the officer used the firearm purely for private ends. *Id.* We concluded that the officer was an angry parent who happened to be in uniform and have a gun at the time of the incident, and any other angry parent could have done what she did. *Id.*

## B. No Error

Huntley made specific sufficiency of the evidence arguments below but did not raise the argument that sufficient evidence did not support the jury's verdict on the "under color of

law" element.  Thus, we review that argument, raised for the first time on appeal, for plain error.  *See Baston*, 818 F.3d at 664.

In any event, Huntley has not shown any error, let alone plain error, in the jury's verdict as to this element. We readily conclude sufficient evidence existed for the jury to find beyond a reasonable doubt that he was acting under color of law when he subjected Turk to unreasonable force.[5]

Although Huntley first contacted Turk while he was off duty and driving his personal truck, he was wearing his full police uniform.  Without his position as a police officer, Huntley would not have been able to require Turk to stop, threaten him with a citation, or direct him to stay in Officer Echols's patrol car and wait.  Further, Huntley's authority as a lieutenant allowed him to direct Officer Echols to transport Huntley to the police station. Huntley would not have been allowed to escort Turk inside the police station alongside Officer Echols without Huntley's status as a police officer, and it was during this walk that he sprayed Turk in the face with mace even though, according to several trial witnesses, Turk was not making any threatening movements or trying to escape.

What's more, but for Huntley's authority as a police officer, he would not have had access to Turk in the holding cell room or the briefing room.  According to the testimony of

---

[5] Huntley does not challenge the sufficiency of the evidence as to the unreasonable force element.

numerous trial witnesses, Huntley beat Turk in the holding cell room and briefing room while Turk was handcuffed and not physically resisting. Unlike the defendant in *Almand*, Huntley did not gain access to Turk at the police station by forcing his way into the building to accomplish a private act, but rather was allowed into the building and allowed to access Huntley based on his employment as a police officer. *See Almand*, 103 F.3d at 1515. Further, unlike the defendant in *Butler*, Huntley did not do what any other angry individual could have done to Turk. Rather, Huntley had the unique ability to detain Turk and continue to access him in the police station because of his status as a police officer. *See Butler*, 685 F.3d at 1267.

Thus, sufficient evidence existed for the jury to conclude that Huntley acted under color of law while subjecting Turk to unreasonable force.

## C. Bodily Injury

On appeal, Huntley also argues that the government did not show that his actions at the police station were the *only* cause of Turk's injuries.

As background, the statutory maximum sentence for a violation of § 242 is one year of imprisonment, but "if bodily injury results from the acts committed in violation" of § 242, the statutory maximum is raised to ten years of imprisonment. 18 U.S.C. § 242. "Bodily injury" means "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness;

(D) impairment of a function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary." *See United States v. Myers*, 972 F.2d 1566, 1572-73 (11th Cir. 1992) (noting that § 242 does not define "bodily injury" and applying the presumption that, in drafting § 242, Congress adopted the term's "established meaning" as defined in numerous other federal criminal statutes).

Here, the government needed to show only that Huntley's unreasonable use of force against Turk caused bodily injury to Turk, not that the unreasonable use of force was the sole cause of all of Turk's injuries. *See* 18 U.S.C. § 242 (enhancing the maximum penalty "if bodily injury results from the acts committed in violation of this section").

Moreover, the trial testimony sufficiently showed that Huntley's actions leading into the police station and inside the building resulted in at least some bodily injury to Turk. Trial witnesses testified that Turk had blood in his mouth and on his face after the briefing room incident, indicating some kind of cut or abrasion occurred in the briefing room. The government entered into evidence a pair of bloodstained pants that Turk testified were stained as a result of his injuries from Huntley and pictures taken of Turk soon after the incident showing him with chipped teeth, cuts, and bruises. Peterson testified that Turk had a bloody lip, abrasions, and red eyes, and that Turk reported feeling pain all over his body. In addition, Turk himself testified that he was in pain because of the mace sprayed in his eyes and

the physical assaults that occurred inside the holding cell room and the briefing room.

This evidence of Turk's injuries, coupled with the testimony from Turk, Officers Craig and Echols, and the four trainees that Huntley physically assaulted Turk with mace, kicked him, and punched him, all while he was handcuffed, not physically resisting, and not attempting to escape, was more than sufficient for a reasonable jury to infer that Huntley's actions in violation of Turk's right to be free from unreasonable force caused at least some of Turk's bruising, bleeding, and pain. Thus, we reject Huntley's argument on appeal about bodily injury.

## III.    CONCLUSION

In sum, sufficient evidence supported the jury's findings that Huntley acted under the color of law when he subjected Turk to unreasonable force and that the use of unreasonable force caused bodily injury to Turk. Accordingly, we affirm Huntley's § 242 conviction.

**AFFIRMED.**