Kenneth K. KILE, Plaintiff,

v.

Walt BETUEL, In his Individual Capacity, and the City of Brunswick, Georgia, Defendants.

Civil Action No. CV296–116.

United States District Court,
S.D. Georgia,
Brunswick Division.

March 31, 1997.

John Thomas McKnight, Jr., Brunswick, GA, for Kenneth K. Kile.

Terry Lee Readdick, Whelchel, Brown, Readdick & Bumgartner, Brunswick, GA, for City of Brunswick Police Dept., T.C. Cowan.

R. Micheal Ethridge, Webb, Carlock, Copeland, Semler & Stair, Atlanta, GA, for Kim M. Clements Kile.

Carl Foster Lindberg, Brunswick, GA, for Walt Betuel.

## ORDER

ALAIMO, District Judge.

Plaintiff, Kenneth K. Kile ("Kile"), brings this claim against Defendants, pursuant to 42 U.S.C. § 1983 for alleged violations of his civil rights. Kile files a claim against Defendant, Walt Betuel ("Betuel"), in his individual capacity, and in his official capacity as a police officer for the City of Brunswick (the "City").[1] Kile also files claims against Defendants, City of Brunswick Police Department (the "Department"), and Police Chief T.C. Cowan ("Cowan"), in their official capacities only.[2] Currently before the Court is the combined motion by Defendants, Betuel, Cowan, and the Department, for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' Motion for Summary Judgment will be **GRANTED**.

## FACTS

This case involves a domestic dispute that seems to have spiraled completely out of control. While employed as a police officer for the City, Betuel became entangled in a marital dispute between Kile and his wife, Kim M. Clements Kile ("Clements").[3] In

---

1. Betuel no longer is employed as a police officer for the City. At all times relevant to the facts alleged in Kile's complaint, however, Betuel served in such capacity.

2. Defendants correctly contend that the Department is not a separate legal entity capable of being sued and, therefore, incorrectly is named as a "party" to this lawsuit. Kile agrees, but argues that his claim, in actuality, is against the City, not against its Police Department. After reading Kile's Complaint, in addition to the briefs filed in support of his argument, the Court agrees that Kile's "intended" Defendant is the City, not the Department. *See Busby v. City of Orlando,* 931 F.2d 764, 775 (11th Cir.1991) (recognizing that the plaintiff's "intended defendant" was the City of Orlando). Accordingly, the Court has revised the caption to reflect accurately the proper parties in this case. The Court also notes that, given the substance of Kile's Complaint, the City received fair and adequate notice of Kile's claims and an opportunity to respond. *Id.* (requiring that the intended defendant receive both notice and an opportunity to respond). Thus, the City has not been unduly prejudiced by Kile's error in naming the Department as a defendant.

3. On March 25, 1997, the Court dismissed with prejudice Defendant, Clements, from this law-

September, 1995, Clements moved into a trailer, located in Brunswick, Georgia, without her husband. Shortly thereafter, on October 11, 1995, Kile entered the property accompanied by two Brunswick police officers to retrieve some of his personal belongings. When Kile and the two police officers entered Clements' trailer, they found not only Clements, but also Betuel.

On the same day, Kile filed a citizen's complaint against Betuel with the Department, alleging that Betuel committed various professional infractions.[4] The internal investigation that was conducted resulted in a finding that Kile's allegations against Betuel were "unfounded."[5] The domestic dispute among these parties raged on, as Clements filed two separate "stalking" charges against her husband in October, 1995.[6] Thereafter, in November, 1995, Betuel, while driving his own automobile, followed Kile to Kile's attorney's office, whereupon a heated exchange took place between the two men.

Directly after their exchange, Kile filed a second citizen's complaint against Betuel, alleging that Betuel committed "terroristic threats" and a simple assault against him. (Defs.' Mot. for Summ. J. Ex. F.) Cowan directed an internal investigation into the facts as alleged by Kile. Cowan also contacted the Georgia Bureau of Investigation ("GBI") to request an independent investigation into the matter. The internal investigation by the Department resulted in a finding that the incident, in fact, did occur and that Betuel's behavior was unbecoming of an officer.

On the same day as the altercation between Betuel and Kile, Betuel and Clements caused an arrest warrant to be issued for Kile. Kile was arrested the next morning on a criminal charge of stalking, and was released later that afternoon.

Here is where the story becomes even more dramatic. Within days of his arrest, Kile posted flyers around Brunswick in conspicuous public places requesting information from concerned citizens on Betuel's "illegal, immoral, or unprofessional conduct...." (Defs.' Mot. for Summ. J. Ex. M.)[7] Subsequent to Kile's posting the flyers, Betuel sought another arrest warrant to be issued for Kile on a charge of aggravated stalking. Kile eventually turned himself into the Department, and was released on bond. Thereafter, Kile filed a third citizen's complaint against Betuel, alleging that Betuel committed misconduct by committing perjury, filing a false police report, and obstructing justice by giving false information to obtain an arrest warrant against Kile. Once again, the Department and GBI investigated Kile's allegations.

Eventually, the State dismissed all charges against Kile for stalking and for aggravated stalking. After the GBI completed its investigation into this entire matter, an arrest warrant was issued for Betuel in February, 1996, on an unrelated charge of insurance fraud. Additionally, prior to the issuance of that arrest warrant, various unrelated citizen's complaints also were filed against Betuel. Cowan asked Betuel to resign from the Department in March, 1996.

## DISCUSSION

### I. Summary Judgment

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled

---

suit. Accordingly, her name has been deleted from the caption.

4. Kile's administrative complaint alleged that Betuel was guilty of misconduct, abuse of position, and "an administrative offense." (Defs.' Mot. for Summ. J. Ex. A.) Kile alleged that Betuel was found with his wife in a manner that was unbecoming of an officer. (Id.)

5. While the investigations of Kile's administrative complaint, in fact, did result in a finding that Kile's allegations were "unfounded," Defendants fail to point out that the investigation also result-

ed in a finding that additional "follow-up" was required and that "further investigation [was] needed by internal affairs." (Id.)

6. Clements and Kile are now divorced. Although unclear, the record reflects that Clements filed for divorce sometime before early October, 1995.

7. It is unclear to the Court whether Kile's posting of flyers preceded Kile's arrest. Defendants contend that Kile's posting occurred "[w]ithin a few days before or after the plaintiff's arrest on the stalking charges...." (Id. at 6.)

to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir.1992). Additionally, a "court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible'." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir.1996). Furthermore, when the evidence is only circumstantial, summary judgment may be granted when a court "concludes that no reasonable jury may infer from the assumed facts the conclusions upon which the non-movant's claim rests." *Id.*

## II. *Section 1983*

■ In order for Kile to maintain his action based upon § 1983, he must show that he has (1) suffered the deprivation of a right, privilege, or immunity secured by the Constitution or the laws of the United States, based upon (2) actions taken under color of state

law. *Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989 (11th Cir.1990); *see also Faucher v. Rodziewicz,* 891 F.2d 864, 868 (11th Cir.1990); 42 U.S.C. § 1983.[8] In the case at bar, Kile complains that

> Defendants intentionally or with deliberate indifference and callous disregard of [his] rights, deprived [him] of his liberty, deprived [him] of his equal protection under the laws, and impeded the due course of justice in violation of the [F]ifth and [F]ourteenth amendments of [sic] the Constitution of the United States and in violation of § 1983.

(Compl.¶ 25.)

In essence, "[t]he crux of Plaintiff's case against Defendant Betuel is that ... Betuel fasely [sic] swore out warrants against ... Kile." (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 4.) Therefore, the Court must answer in the affirmative two threshold, overarching questions before turning to the merits of Kile's detailed claims against each named Defendant. First, the Court must determine whether Betuel's actions were taken under color of state law. Second, the Court must determine whether Kile alleges a deprivation of a right, privilege, or immunity secured by either the Constitution or the laws of the United States. If either question is answered in the negative, then Kile fails to assert a viable claim under § 1983.

### A. Color of State Law

■ In order for Kile's claims to withstand summary judgment, he must show that Betuel acted under color of state law. This determination is a matter of law for the Court to decide. *See Blum v. Yaretsky,* 457 U.S. 991, 996–98, 102 S.Ct. 2777, 2782, 73 L.Ed.2d 534, 541–42 (1982); *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d

8. The full text of § 1983 states:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the *deprivation of any rights, privileges, or immunities secured by the Constitution and laws,* shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except

that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (emphasis added).

333 (1980). Defendants assert that Betuel was not acting under color of state law in any of his actions because "a truck driver, veterinarian, or farmer could have . . ." taken similar actions against Kile and not be subject to liability under § 1983. (Defs.' Mot. for Summ. J. at 19.)

The United States Court of Appeals for the Eleventh Circuit recently clarified the issue of whether, in committing certain actions, a police officer acts under color of state law. *See Almand v. DeKalb County, Ga.,* 103 F.3d 1510 (11th Cir.1997). A brief review of the facts in *Almand* is necessary, as they are vital to understanding the lines that the Eleventh Circuit draws with respect to this particular issue.

In July, 1990, Mary Almand's ("Almand") daughter, Monique, was kidnapped, raped, and ultimately rescued by the Atlanta Police Department. *Id.* at 1511–12. Prior to Monique's rescue, Almand met officer Floyd Bryant ("Bryant") while posting "missing" flyers near a convenience store. Bryant offered his assistance as a police officer in locating Monique, if Almand would agree to go out on a date with him. *Id.* at 1511. Although Almand refused the terms of Bryant's offer, she asked him for help. Thereafter, the two had several telephone conversations concerning Monique's disappearance.

After Monique's rescue, Almand agreed to assist Bryant in "exposing a dirty cop" in exchange for Bryant's assistance in locating Monique's kidnappers. In August, 1990, Bryant showed up at Almand's apartment and "asked to come in to talk with her on urgent matters about her daughter." *Id.* at 1512. After making several sexual advances toward Almand, all of which were rejected, Bryant agreed to leave the apartment. *Id.* After Almand closed the door, Bryant forcefully broke through it, entered the apartment, physically struggled with Almand, and forcibly raped her. *Id.*

The United States District Court for the Northern District of Georgia denied Bryant's motion for summary judgment based on qualified immunity grounds, and Bryant appealed. *Id.* The issue on appeal was whether Bryant, in raping Almand, was acting under color of state law. *Id.* at 1513. The Eleventh Circuit reversed the trial court's denial of summary judgment and determined that "Bryant was not acting under color of state law at the pertinent time. Almand, therefore, cannot make out the elements of her section 1983 case, and summary judgment must be granted to Bryant. . . ." *Id.*

In deciding the case, the Eleventh Circuit states that a "person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." *Id.* (citing *Edwards v. Wallace Community College,* 49 F.3d 1517, 1522 (11th Cir.1995)). The dispositive issue is "whether the official was acting pursuant to the power he/she *possessed by state authority* or acting only as a private individual." *Id.* (citations omitted and emphasis added). A detailed inquiry into the facts is required to determine whether, in a given situation, a police officer acts under color of state law, or acts as a private individual. *Id.* at 1514. The Eleventh Circuit states in dicta that Bryant's initial entry was conducted under color of state law, since he was a police officer and proffered information about an ongoing kidnapping investigation. *Id.* at 1514–15. Bryant's second entry, however, was held not to be under color of state law. *Id.*

In determining that Bryant was not acting under color of state law when he entered Almand's apartment a second time, the Eleventh Circuit focuses on several factors. First, the court notes that Bryant was not wearing a uniform and was off-duty at the time of the entry. *Id.* at 1515 n. 10. Second, the court notes that Bryant's actions were no different than "any other ruffian" and that the rape was "a private act not accomplished because of 'power possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law.'" *Id.* at 1515 (citing *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). Third, the court notes that Bryant's actions involved the use of force and could constitute torts and crimes under the laws of Georgia. *Id.* Finally, the court was willing to draw what, to some, might be considered to be an "arbitrary line" in determining that Bryant did not gain en-

try to Almand's apartment "by virtue of any authority *he might have been given by the state to act as a police officer.*" *Id.* (emphasis added).[9]

In the case at bar, the Court also must draw a line concerning Betuel's conduct. While perhaps considered by some to be a case involving the drawing of arbitrary lines, *Almand* makes it clear that Betuel was acting as a private person, even a ruffian at times, in all of his actions taken against Kile.

The incidents of which Kile complains, which form the basis of Kile's complaint, all are actions that any private person could have taken against Kile. None of Betuel's actions were taken by virtue of any authority that Betuel was given by the City or state to act as a police officer.

For instance, when Kile found Betuel alone with Kile's wife, which undoubtedly served as the catalyst for this lawsuit, Betuel's profession was completely irrelevant. As Defendants properly point out, Betuel could well have been a veterinarian or farmer. Similarly, when Kile and Betuel engaged in a heated confrontation outside of Kile's attorney's office, Betuel was off-duty, wearing civilian clothes, and driving his own automobile.[10]

Finally, Betuel's testifying in state court, which testimony caused two warrants to be issued for Kile's arrest, were not actions taken solely by virtue of his status as a police officer. Betuel did not personally arrest Kile, but rather acted as a private citizen and sought an arrest warrant through the state's Magistrate Court. Betuel could have been employed as a doctor or lawyer, or even could have been unemployed, and performed the same task with respect to Kile. In fact, Kile admits that his wife also filed stalking charges against him, and sought a warrant for his arrest. Kile's wife certainly was not acting under color of state law in her actions. Once again, Betuel's status as a police officer is largely irrelevant.[11]

██ As in *Almand,* the Court must draw a line. If Betuel arrested Kile personally, then such action clearly would be under color of state law. The Court finds that Betuel had two available options with respect to his allegation that Kile was stalking both him and Clements. First, Betuel could have acted under color of state law and arrested Kile without a warrant, if based upon probable cause. Or, as is the case here, Betuel could slide into his "private citizen" shoes and use those processes available to the gen-

9. It is interesting to note that the Eleventh Circuit cites *Dang Vang v. Vang Xiong X. Toyed,* 944 F.2d 476, 479 (9th Cir.1991), for the proposition that certain plaintiffs, *e.g.,* foreign refugees, may be so "in awe" of government officials, that a jury reasonably could conclude that a government official could exert influence, power, and even physical control over such a class of plaintiffs based solely on his or her position.

The Court finds that Kile is not a member of such a class of plaintiffs. There is no evidence that Kile was "in awe" of Betuel based solely on Betuel's position as a law enforcement officer. In fact, just the opposite appears to be true. Kile repeatedly filed complaints, "faced off" against Betuel, and fought back against what Kile believed to be inappropriate conduct by Betuel.

10. The Court notes that there is some evidence that Betuel may have been wearing a weapon and badge at the time of the altercation. The Court must make all reasonable inferences in favor of Kile, as the non-movant, and finds that Betuel was likely wearing a badge and weapon. However, as in *Almand,* the undisputed evidence is that Betuel was off-duty at the time of the incident and that he was wearing civilian clothes. Also similar to the facts in *Almand,* Kile was aware *prior* to the incident that Betuel was a

police officer. A badge and weapon were merely incidents of Betuel's profession, much as they would be if Betuel was a private security guard or private detective.

As in *Almand,* the Court must focus on Betuel's *conduct* and whether his actions were taken by virtue of the authority that he was given by the state of Georgia to act as a police officer. In this case, Betuel acted as a private individual when he confronted Kile over a domestic dispute. Betuel was not acting by virtue of any authority given to him to act as a police officer. Moreover, Betuel was not discussing police matters or engaging in an ongoing investigation with Kile, as was Bryant during his initial entry into Almand's home. In this case, Betuel was acting as a private citizen discussing personal matters with another private citizen.

11. While it is true that "but for" his status as a police officer. Betuel may not have been as familiar with the procedural requirements entailed in testifying before a state Magistrate Judge in order for an arrest warrant to be issued, the Court must focus on Betuel's conduct. Betuel did not issue the warrant, did not personally arrest Kile, and did not rely on his status as a police officer to procure the arrest warrant.

eral public to secure Kile's arrest. By analogy, if a police officer is assaulted, he may choose to make an immediate arrest of his attacker. However, that police officer may choose to forego making an immediate arrest and, instead, file a civil lawsuit against his attacker for damages, which is a process available to any other citizen. The line is drawn, and a police officer does not act under color of state law, therefore, when that officer makes use of the same processes available to any member of the general public in effectuating a result authorized by law.

Because Kile fails to show that Betuel acted under color of state law in any of the actions of which Kile complains, Kile's claim brought against Betuel under § 1983 in his official and individual capacities must fail. Moreover, because all of the allegedly unconstitutional acts complained of by Kile are based upon Betuel's conduct as a private individual, Kile's claims against the City and Cowan also must fail.[12] Stated simply, Kile cannot establish the first of the two required elements to bring a successful action under § 1983. Accordingly, the Court need not answer the second question concerning whether Kile has suffered a deprivation of a right, privilege, or immunity secured by the Constitution or the laws of the United States.

## CONCLUSION

The Court has considered carefully Defendants' combined Motion for Summary Judgment, as well as Kile's response thereto. For the foregoing reasons, Defendants' motion is **GRANTED.** The Clerk is directed to enter the appropriate judgment.

---

12. Kile has filed a claim against the City and Cowan in their official capacities only. Official capacity lawsuits "represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 121 (1985). Thus, Kile's claim against Betuel and Cowan in their official capacities, in essence, is a claim against the City. Since Kile's claim against the City is based entirely upon Betuel's conduct, Kile's claim against the City fails along with Kile's claims against Betuel.