**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 96-3952

| | | |
|---|---|---|
| Martha Roe, individually and as Mother | * | |
| and next friend of Jane Doe, a minor; | * | |
| Metropolitan National Bank, as | * | |
| Guardian of the Estate of Jane Doe, | * | |
| a minor, | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Arkansas. |
| | * | |
| Jack Humke, individually and in his | * | |
| official capacity as an officer in the | * | |
| City of Lonoke Police Department; | * | |
| Floyd Van Horn, individually and in | * | |
| his official capacity as Chief of the | * | |
| City of Lonoke Police Department, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 13, 1997

Filed: October 30, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN, Circuit Judge, and
BEEZER,[1] Circuit Judge.

_____

_____

[1]The HONORABLE ROBERT R. BEEZER, United States Circuit Judge for the
Ninth Circuit, sitting by designation.

WOLLMAN, Circuit Judge.

Martha Roe, suing individually and as the mother and guardian of Jane Doe, appeals from the district court's[2] adverse grant of summary judgment in her 42 U.S.C. § 1983 action. The sole issue on appeal is whether defendant Jack Humke was acting under color of state law at the time he sexually assaulted Jane Doe. We conclude that he was not, and thus we affirm.

Because this is an appeal from the grant of summary judgment, we review the evidence in the light most favorable to Roe, the nonmoving party. See McCormack v. Citibank, N.A., 100 F.3d 532, 534 (8th Cir. 1996). At the time of the assault, Jack Humke was employed as a police officer for the city of Lonoke, Arkansas. As part of his duties as a police officer, he worked with the local school, providing security and conducting other programs. Humke met eleven-year-old Jane Doe in 1994 while sitting outside the school in his patrol car and in uniform. Humke was regularly at the school as part of his duties, and he would see Doe and talk to her after school three or four times a week. He occasionally gave her rides home. He bought her candy and sodas and gave her a pen set for Christmas. While he was driving around town in his patrol car, he would drive to Doe's house and talk to Doe from the car. Humke hugged and kissed Doe through the window of the patrol car, explaining that he did it "like a grandfather hugging a granddaughter," and saying that he "didn't pay no attention" when Doe hugged his neck and kissed his cheek. Humke once said that he wished he "were 20 years younger so (he) could get some of" Doe.

While at the school, in his police car and in uniform, Humke several times suggested to Doe and some of her friends that they go to Humke's farm to ride all-terrain vehicles. Doe finally agreed. On Saturday, February 4, 1995, Humke picked up Doe and another minor female at Doe's home. Humke was off-duty at the time, was

---

[2]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

driving his personal vehicle, was not wearing his uniform or badge, and was not carrying a gun. Humke met with Doe's mother and step-father, whom he had met before and who knew that he was a police officer. He told them where he was taking Doe and what they would be doing and said his purpose was to reassure them that Doe would be safe with him. Doe's parents agreed that she could go with Humke. Humke then took Doe and the other young girl to his farm, where he hugged, kissed, and fondled Doe while riding behind her on the all-terrain vehicle.

Humke did not see Doe again until after school the following Tuesday, when he drove up to her in his patrol car, gave her what she described as a "scary" look, and asked if she had had a good time. Doe stated that she felt Humke was pressuring her not to say anything. Doe's parents eventually learned from Doe what had happened and complained to the Arkansas State Police about Humke's actions. Following an investigation, Humke was terminated from the police department. He subsequently pleaded *nolo contendere* to a charge of first-degree sexual abuse and was incarcerated.

Roe's lawsuit sought damages based on alleged violations of Doe's Fourteenth Amendment substantive due process rights to liberty and privacy and of her Fourth Amendment right to be free from unreasonable searches and seizures. Roe also sought declaratory and injunctive relief and asserted state law claims.

Humke acknowledged that he was a "goodwill ambassador" for the department with children, that when he talks to children he is trying to get them to trust him, and that it is important for children to learn to trust the police. Humke also acknowledged that he was subject at all times to the Lonoke police department's code of ethics, which meant that he was on duty twenty-four hours a day and subject to discipline for incidents in his private life.

The district court concluded that Humke was not acting under color of state law at the time he assaulted Doe. The court noted that Humke was not on duty at the time,

was not in uniform, was not wearing a badge, and was not carrying a weapon. The court concluded that Humke was not engaged in or pretending to engage in acts required of him as part of his official duties as a police officer. The court rejected Doe's argument that Humke had used his position of trust and authority as a police officer to create the situation whereby he could assault her, concluding that "while Officer Humke may certainly have been revered as a police officer" by Doe and her parents, nothing in the record suggested that his actions "were related in a meaningful way either to his governmental status or to the performance of his duties." After granting summary judgment to defendants on the section 1983 claim, the district court declined to exercise supplemental jurisdiction over the state law claims.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). We are concerned only with "the second essential element"--whether Humke was acting under color of state law. See id. at 49.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Id. (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id. at 49-50 (citations omitted). We have explained that "[t]he injury complained of must have been caused by the exercise of some right or privilege created by the state, by a rule of conduct imposed by the state, or by a person for whom the state is responsible." Parker v. Boyer, 93 F.3d 445, 448 (8th Cir. 1996) (citing Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)), cert. denied, 117 S. Ct. 1081 (1997).

"It is clear that under 'color' of law means under 'pretense' of law.  Thus acts of officers in the ambit of their personal pursuits are plainly excluded.  Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it."  Screws v. United States, 325 U.S. 91, 111 (1945) (plurality opinion).  As the First Circuit has said, "[w]hether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties."  Martinez v. Colon, 54 F.3d 980, 986 (1st Cir.), cert. denied, 116 S. Ct. 515 (1995).  Absent any actual or purported relationship between the officer's conduct and his duties as a police officer, the officer cannot be acting under color of state law.  See id. at 987; Van Ort v. Estate of Stanewich, 92 F.3d 831, 838 (9th Cir. 1996), cert. denied, 117 S. Ct. 950 (1997); Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3rd Cir. 1994); Pitchell v. Callan, 13 F.3d 545, 548-49 (2d Cir. 1994).

Viewing the events of February 4 solely in isolation, Humke was not acting under color of state law because he was neither actually acting in his official capacity or exercising his responsibilities pursuant to state law, nor purporting to so act.  Humke took Doe to his farm for his own personal pursuits, not for any purpose legitimately or purportedly related to the exercise of his responsibilities as a police officer.  As the district court pointed out, Humke was off-duty, was not wearing his uniform or badge or carrying a gun, and was driving his personal vehicle.  Cf. Haberthur v. City of Raymore, Mo., 119 F.3d 720 (8th Cir. 1997) (plaintiff sufficiently alleged officer was acting under color of law where officer once followed her home in his police cruiser and threatened to give her a speeding ticket, and later, while he was on duty and in uniform, sexually assaulted her at her place of work).

Nor does Humke's admission that he was subject to the code of ethics transform into action under color of law any of his off-duty actions that were not related to the lawful or purported exercise of his responsibilities as a police officer.  See Barna, 42 F.3d at 818 n.11 (county policy that officers are on-duty 24-hours a day probative of

-5-

"'under color' action if the defendant officer allegedly violated the plaintiff's rights while engaging in activities normally associated with the police function"); <u>Revene v. Charles County Comm'rs</u>, 882 F.2d 870, 873 (4th Cir. 1989) (where, pursuant to ordinance, police officer on duty 24-hours a day and expected to take police action in certain situations, action purportedly taken pursuant to police authority would be under color of law).

Roe argues, however, that we cannot view the events of February 4 in isolation and that we should instead consider the entire course of Humke's relationship with Doe. When so viewed, Roe contends, the facts establish that Humke was acting under color of law because he abused his position and authority as an officer of the law to create circumstances under which he could sexually assault Doe; thus, there was a sufficient nexus between the abuse of his authority and the sexual assault. In support of her argument, Roe cites <u>Doe v. Taylor Indep. Sch. Dist.</u>, 15 F.3d 443 (5th Cir.) (en banc), <u>cert. denied</u>, 513 U.S. 815 (1994); and <u>Dang Vang v. Vang Xiong X. Toyed</u>, 944 F.2d 476 (9th Cir. 1991).

In <u>Dang Vang</u>, defendant Xiong was employed by the state to help find jobs for refugees and to teach them to drive. The two victims, both Hmong refugees, came into contact with Xiong in the course of seeking employment or assistance in learning to drive. Xiong arranged supposedly legitimate meetings with the women, but then raped them instead. <u>See</u> 944 F.2d at 478. The Ninth Circuit concluded that sufficient evidence existed to establish that Xiong was acting under color of state law. The court noted that each plaintiff came into contact with Xiong because of her need for employment and her understanding that Xiong and his department could be relied on to provide jobs; each plaintiff was raped during a meeting with Xiong that was related to his provision of services pursuant to his state employment; and as refugees dependent on government aid, the victims were "in awe of government officials." Thus, the jury could have concluded that Xiong had used his government position to exert influence and control over the plaintiffs in order to rape them. <u>See id.</u> at 480. <u>See</u>

also <u>Whitney v. State of New Mexico</u>, 113 F.3d 1170, 1174-75 (10th Cir. 1997) (citing <u>Dang Vang</u> and concluding that plaintiff stated claim that individual defendant was acting under color of law because at time he harassed her, he had authority over plaintiff's ability to obtain day care license and he "could not have harassed [plaintiff] absent his authority as an agent for the State").

In <u>Doe</u>, the Fifth Circuit rejected the argument that a high school teacher who had engaged an ongoing sexual relationship with one of his students was not acting under color of law, stating that the teacher "took full advantage of his position as Doe's teacher and coach to seduce her." <u>Doe</u>, 15 F.3d at 452 n.4. The court noted that the teacher required Doe to do little or no classwork but gave her "A" grades; spoke to another teacher about raising Doe's grade in another class; took Doe from his classroom to an adjacent lab room to engage in sexual contact with her; and used his position as her basketball coach to create other opportunities for sexual contact. <u>See id.</u> The court stated that when a "real nexus" is present "between the activity out of which the violation occurs and the teacher's duties and obligations as a teacher, then the teacher's conduct is taken under color of state law," and that such a nexus was "clearly present" in Doe's case. <u>See id.</u>

Accepting for the purposes of argument Roe's proposition that Humke's entire course of conduct must be considered in determining whether he acted under color of state law by placing himself in a position to assault her daughter, in both <u>Dang Vang</u> and <u>Doe</u>, there was a nexus between the defendant's official position and his relationship with the victim. In <u>Dang Vang</u>, it was Xiong's position as a state official with the power to aid refugees in finding jobs and learning to drive that put him in the position to rape the plaintiffs. In <u>Doe</u>, it was the defendant's position as Doe's teacher and his use of the privileges of that position--his power over her grades and access to school buildings--to seduce Doe and create the opportunity for sexual contact. Both cases involved a defendant who was acting under pretense of his authority and who was purporting to exercise the power given him by the state.

Roe argues that had Humke not been a police officer, the actions of a relative stranger in talking to Doe and giving her rides and small presents would not have been tolerated. Further, she argues that Humke's credibility was enhanced by virtue of his position as a police officer. All of this may be true, but the knowledge of Humke's status alone by Doe and her parents is not sufficient to convert the actions Humke took in the pursuit of his private interests into action taken under color of state law. In D.T. by M.T. v. Independent Sch. Dist. No. 16, 894 F.2d 1176 (10th Cir.), cert. denied, 498 U.S. 879 (1990), a teacher and basketball coach sexually assaulted three students, all members of his basketball team, while they were on a fund raising trip for a private summer basketball camp. The court rejected the plaintiff's argument that the constitutional deprivations could be attributed to the state because of the "cloak of authority" held by a teacher and concluded that the teacher was not acting under color of law because there was no nexus between his duties as a teacher and the summer basketball camp. See id. at 1188. Similarly, in Becerra v. Asher, 105 F.3d 1042 (5th Cir.), cert. denied, 66 U.S.L.W. 3016 (U.S. Oct. 6, 1997) (No. 96-2052), a student was sexually assaulted by his former teacher. In concluding that the teacher was not acting under color of state law, the court noted that although the teacher had "first befriended and shown a special interest in" the victim at school, there was no real nexus between the teacher's duties and the sexual assault. The court rejected the argument that the sexual abuse would not have occurred had the teacher not won the student's trust and affection while serving as teacher, stating that the constitutional violation "did not extend to the development of trust and affection." See id. at 1047 (citing Doe, 15 F.3d at 445, 450, 451, 454).

We conclude that Humke was not acting under color of law because there was no nexus between his position as a police officer and his abuse of Doe on the day in question. As the district court aptly stated, "The sexual abuse of plaintiff, while reprehensible and to be condemned in the strongest possible terms, was a private tort committed by a person acting in a purely private capacity."

Roe also sued Floyd Van Horn in his individual capacity and his official capacity as the chief of police for the City of Lonoke at the time the events occurred. Roe alleged that Van Horn's acts, customs, and policies as chief of police in ignoring previous incidents of sexual misconduct by Humke and other officers, and his failure to adequately train, supervise, and discipline Humke and other officers, constituted deliberate indifference to Doe's constitutional rights and resulted in the injuries she suffered. Because there was no underlying violation of Doe's constitutional rights by a state actor, however, her claim against Van Horn necessarily fails. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); Becerra v. Asher, 105 F.3d at 1047-48; Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir.), cert. denied, 117 S. Ct. 179 (1996); Abbott v. City of Crocker, Mo., 30 F.3d 994, 998 (8th Cir. 1994).

The judgment is affirmed.

RICHARD S. ARNOLD, Chief Judge, dissenting.

This is a close case, and the Court's opinion is well argued, but I believe the facts in this record, when viewed in the light most favorable to the plaintiff (the party opposing summary judgment), would justify a rational jury in finding that the defendant Humke acted under color of state law.

Part of Humke's job as a police officer was to work with the local school as a "goodwill ambassador," providing security and conducting other programs. He first met the plaintiff while he was sitting outside the school in a police car and in uniform. He regularly went to the school as part of his duties. He would sometimes go to the plaintiff's house and talk to her from his patrol car. He was off duty, in his personal car, and not wearing a uniform, on the day that the alleged abuse occurred, but it seems to me a reasonable inference that the plaintiff's parents would not have allowed her to go with Humke if it had not been for his official position. When he came to the

plaintiff's house that day, he got out of his car and went into the house to reassure the parents that he would be careful, and that he and plaintiff would be going to a safe place. The parents knew that he was a police officer.

In short, Humke's official position enabled him to gain the parents' confidence and allow their daughter to go with him. The situation can fairly be described as abuse of official authority to put the minor plaintiff in a vulnerable position. Later, Humke attempted to intimidate the plaintiff into silence, or at least the trier of fact could so find, and was in his patrol car when he did so. "[A] defendant in a §1983 suit acts under color of state law when he abuses the position given him by the State." West v. Atkins, 487 U.S. 42, 50, 108 S. Ct. 2250, 2255 (1988).

For these reasons, I respectfully dissent.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.